Your Honor, Nathan Ryan Miller on behalf of Western United, and I believe, pursuant to the Justice's comment, we'll be arguing the fees issue first. And I will take five minutes for the original argument, and then I'll reserve five minutes for— Okay. You may proceed. Thank you. May it please the Court. In this case, summary judgment was entered on behalf of my client in a U.N. lawsuit. Basically, there was a suit over here for U.N. benefits under insured motorist, or uninsured motorist, and then a separate suit that was combined with the case for extra-contractual liability. In Nevada, those cases can be brought separately, and in fact, many of the cases suggest that they should. Both Pemberton and Pulley are cases that say you really should try the contract issues first, and then later sue on bad faith. Plaintiff chose to combine these cases. My client hired two separate law firms to defend each because they really are separate claims. So one firm represented AAA or Western United on the value of the U.N. claim, and my firm represented them on the extra-contractual claims, bad faith, punitive damages, and Unfair Claims Practice Act violations. The case was summarily adjudicated because the Court found that none of the damages were supported, found that the bad faith claim and Unfair Claims Practice Act had no actual evidence to support it, and found that the plaintiff could not credibly argue their position with regard to the violations. Of course, as a result, since bad faith isn't sufficient to warrant punitive damages, punitive damages were also dismissed because it's a higher standard than I'm sure we'll be talking about later as far as clear and convincing evidence of malice, oppression, or fraud. In granting the summary judgment, what's important is the judge used that language specifically. There was no evidence, and they couldn't credibly argue. So after the summary judgment was entered, my client moved for its fees and costs, both as — both under an offer of judgment statute, as well as under the statute for claims that are brought without a reasonable basis, NRS 18.010. Under the offer of judgment statute, the question really was fourfold. And the Court had to analyze, was the claim brought in good faith? Was the offer made in good faith in timing and amount? Was the refusal to accept the offer in bad faith? And were the fees requested reasonable? For the offer of judgment, the fees were $10,000 approximately, and plaintiff didn't challenge that. And the Court found that in our favor. As to the reasonableness of the offer, the Court found that because the offer was made after discovery was closed and after all of the dispositive motions had been fully briefed, that clearly $10,000 for an asset worth zero and all the cards were on the table was reasonable in amount and timing. And really, the amount was closer to $21,000 because it would have wiped out our cost award, which is around $11,000. So two out of four factors were found in our favor, and two were found in plaintiff's favor, the two that deal with whether or not the claim was brought in good faith and whether or not they rejected the offer in good faith. And where the Court abused its discretion, because, of course, this is an abusive discretion standard, is that he looked at the fact that they had also brought a U.M. claim separately for benefits that survived the summary judgment, that my firm had nothing to do with, that it was completely separate from the causes of action we brought. And because of that, he said, well, so the entire claim wasn't meritless. Therefore, I'm not going to – I can't find that under 18.101 or 010 that it was without grounds. He then goes on to say similarly that the rejection was in – was not in bad faith and that the claim was brought in good faith because they had this expert that they relied upon. I would submit that that is an abusive discretion as well, because what that really means, taken at face value, is any case where you're able to find an expert that you can pay to testify, then you're insulated from a fee award because someone believed your case, even if the Court specifically and expressly finds there is no evidence and no credible arguments that can be made. And based on that alone, the summary judgment order and the sole reasons that the request for fees was rejected, I think the Court abused its discretion. And there was nothing else provided as their basis for rejecting that. Did the district court – Nevada law applies to this case? Correct. Is there an argument that he failed to follow the Nevada law, or is it, in your view, just a factual issue? Both. And the Nevada law factors in, I think, because under NRCP 68, which is the offer of judgment rule for the Nevada courts, it says that fees shall be – or the rejecting party shall pay costs and fees. And so at least as that portion, and as we discussed, not treating the claims individually since these are tort claims and these are contract claims, and all of the fees solely dealt with this because it was all from one firm that only dealt with these issues, I think the Court may have ignored Pemberton and Pulley in combining the two cases. Well, there's nothing to suggest he did that. He took the Beatty factors, talked about them, gave a reason for finding in your client's favor on two out of the four, went the other way on the other two. There's a tie. I'm not sure what the law is. The tie goes to the nonmoving party? Actually, that's not true because under the Beatty factors, the Court has clearly said no one factor is dispositive, which means that one factor can be dispositive. So simply the fact that after everything was closed, after all of the cards were on the table, after a plaintiff clearly knew what defendant was arguing and had a chance to look at the basis for why summary judgment was eventually entered, that should be enough. Just winning the second factor should be enough as long as the fees were reasonable. The other two factors I believe were factually in error and legally in error because it conflicted with the prior ruling. Well, I'm not sure that's true. I mean, the standard is a little different. The standard is a disputed fact that would preclude summary judgment versus just a case brought in bad faith. I think the standard is a little different. Where you draw the line, I think, is the difficult line to draw, and that's why I'm having trouble. I may have ruled differently than the district judge in this case. As a district judge, I make these rulings all the time, but it's not a fine line or a well-drawn line, it seems to me. And he knew best where he was drawing that line to grant the summary judgment versus finding that it wasn't completely in bad faith. It seems to me there are two different standards. And maybe if he hadn't explained why, I think that that may be the case. But here, his only basis, at least for the offer of judgment portion, was that they relied on an expert. Well, that wasn't the only basis. That was a substantial part of it. He didn't have his hat completely on that, but that was certainly one of the factors. And under the other, the 18.010, it was that the two cases were combined, and that was the sole basis for that declination on the case brought without reasonable grounds. And so I didn't understand that to be the reason for denying all the fees, that it was solely because the cases were the different claims, the contractual and the noncontractual claim were brought in the same lawsuit. I don't recall him making a definitive determination on that. Where is that in the record? Page 6, AER6. And it is line 17. It says that we cannot find that plaintiff's claims were so frivolous and groundless so as to require the finding that she should pay for all of attorney's fees since the commencement of the action. There is little dispute that plaintiff had a right to benefits of some amount under her insurance policy. So what the Court is really doing is mixing the two. Okay. I think I read that a little bit better than you do. Counsel, I would say I also read that differently, because I read it as just indicating she's in the ballpark, she's got some claim and a reason to be dealing with the insurance company, and the judge didn't think bringing these other noncontractual claims was totally frivolous. But isn't it a case where the judge has to look at the total circumstances to make an assessment like that? And then once the judge does, we're reviewing it for abuse of discretion? Yes. But again, I think that the issues that were elucidated by the Court's order, as far as the reason for denying it, I think that was an abuse of discretion. And your claim on the total fees for baseless claims was about 400,000, and your claim on the offer of judgment not being accepted was for about 10,000, right? Correct. Okay. Thank you. And then I'd like to at least save 30 seconds, but the other issue is on costs. Plaintiff claims that the expenses for doctor depositions shouldn't be included, but plaintiff argued that because the doctors said X, Y, and Z, that we were in bad faith for not accepting. So the doctor depositions clearly factor into the bad faith portion of this claim. Okay. Thank you. Thank you. Good morning. May it please the Court. Scott Cantor for the appellant, Appellee Linda Herrera. I would like to reserve 5 minutes of my time for rebuttal. May it please the Court. Counsel. Sir. At this point, I thought you were just answering and opposing the argument on fees by Western. Yes. So you rebuttal, you're the opposition argument. And then you have a separate argument on your appeal. Understood. About the summary judgment. Understood, Your Honor. Thank you. Your Honor, we have the four BD factors here. And the district court determined that two of those factors weighed in favor of the defendant and two of those factors weighed in favor of the plaintiff. If we look at what the factors are that weighed in favor of the defendant, it was that the defendant's offer was reasonable and in good faith. That's factor number two. And factor number four, that the fees sought were reasonable. However, the factors that weighed in Linda Herrera's favor had to do with whether or not she brought her claim in good faith in the first instance and whether or not her decision to reject the offer was reasonable under the circumstances. And on both of those factors, the district court found in favor of Linda. In other words, when we looked at the real substance underlying the Rule 68, Linda did bring a claim with a basis. The court was very clear that it had found that the claims were not brought without reasonable ground and were not brought to harass the defendant. And further, the court found that in rejecting the offer, she did act reasonably in good faith under the circumstances. So we have two technical factors that weigh in favor of the defendant, the timing in good faith of the offer and whether the fees in light of the work done and the experience of the attorney was reasonable. But when we look at the substantive issues, was this claim brought in good faith? That has been decided in favor of the plaintiff. And was the plaintiff's decision to reject the offer in good faith? Again, that substantive claim was found in favor of the plaintiff. As Judge Gould noted, we're here today to look at an abuse of discretion unlike the summary judgment issues where this Court will review the record de novo. And based upon the judge's ruling, he was very clear as to why he made these determinations on fees, and again, substantively, they did weigh in Linda's favor. I don't think it was just simply a matter of two as opposed to in favor or two against. I'm not a big factors person. I think it limits cases, and I don't think they always fit into pigeonholes. So I look at factors as recommendations to the trial court of areas they should look into, and if there's something else that's more important, that they have no hesitancy about looking into them, so that they come out with two and two doesn't strike me as the way we make decisions. But what does strike me is the problem of whether abuse is discretion. So aside from the factors, why do you defend the judge that he didn't abuse his discretion in light of the argument that counsel made? He didn't abuse his discretion because he made a determination in the underlying summary judgment that Linda did not act unacceptably in bringing her suit. In fact, in the Court's decision, and I will address this in the other appeal, in the Court's decision on the summary judgment at page 11, footnote 7, the judge wrote, and I quote, The court found this a very close case. It determined that because plaintiff's filing of a lawsuit was not clearly a breach of a policy in the way that refusing to submit to an IME or refusing to provide medical records would be, and because plaintiff set forth some evidence that she was rather than during the treatment, plaintiff should not be denied recovery altogether on her claims. The reason I raise this is that in looking at the summary judgment, the Court is finding this to be a close call. He is actually weighing evidence and making a determination based upon conflicting evidence, and ultimately he came down on the side of the defendant. But when we apply that to the attorney's fees issue, the judge is recognizing that even in deciding the summary judgment, he determined that this claim was not brought in bad faith, Linda's claim. He determined that she did have a reasonable ground to bring the claim. And then further, he determined in looking at the totality of the evidence that she did not act in bad faith in rejecting the offer of judgment. So we have a claim that is brought in good faith that was not brought in bad faith. When you say that she was directed not to supply the information to Lader, directed by whom? By two of the AAA adjusters, Your Honor. There was testimony specific. What about her lawyer? There were two things going on. There was communication between the adjuster and Linda, where the adjuster, Kitty Boo, told Linda that it would be better, in fact, preferable if she just tendered all of her records after treatment, and she explained why. She found that that was early on. Yes, but she found that she sensed some urgency from Barrera in wanting to get the case resolved. Now, later on, did her counsel give her advice? Well, the counsel was also in communication with the adjuster. And the adjuster You seem to be not wanting to answer this question. I'm sorry, maybe I was. There's a lot of hardball that was being played here. And at some point, people have to take responsibility. I understand. I was a trial lawyer for 15 years before I got into this more placid area. And there is hardball going on. And she has to take responsibility for what her lawyers do. We can't just divide the two. And if you say she's taking direction, the record says she was, but she's also taking direction from her lawyer. I would hope she was. But isn't this an issue of fact that a trial judge had to determine in deciding whether summary judgment should be granted? Holding back medical records is, you can't make an evaluation until you get the medical records. Holding back the medical records and then making demands before they get the medical records. It seems like to me that that should be in the mix of the determination. It should be. And I'm glad you raised that, Your Honor, because the demand was made, and it accompanied by over 150 pages of medical records and medical bills. There was a report from a Dr. Bacheron. It was a simple evaluation. There was no treatment. That had not been included.  And there was an $80 bill that had not been included. Other than that, the adjusters had 150 pages of medical records submitted with the demand, and within 30 days of the submission of the demand, they had Mendoza signed HIPAA release. And how long was the demand left open? Four months, Your Honor. The demand was initially made, with the Court's indulgence, to allow the insurer to receive records on August 21 and on October 2. The demand was made on June 12, and that demand contained the 150 pages of records, including the reports from the medical imaging, although not the films themselves. The fully executed HIPAA was tendered on July 9. It appears from the claims file that the insurer received records on August 21, and on October 2, counsel requested that an offer be forthcoming. And then on October 5, counsel had a telephone conversation with the adjuster Cruz, who then again reiterated that the collision could not have caused the shoulder injury because Linda's car did not sustain enough damage. So the demand with the medical records was tendered July 12, and there wasn't a demand from counsel that there be some offer until October 5. When did the medical records arise that indicated she'd had shoulder problems before the accident? I believe that there were records tendered on June 12 that pertained to that issue. I'm sorry, Your Honor, can I have that again? Your question? In relation to when the demand for settlement was made, when was the record about the prior shoulder injury made available to the insurance carrier?  The documents from that position regarding the prior shoulder complaint was included with the 150 pages of documents on June 12. Okay. And the demand was made on what day? June 12. Okay. That was the demand letter with the records. It was open for 10 days. It was open for 10 days, but we can see from the record in Mr. Clackett's affidavit in support of the attorney's fees opposition that there was an extension of time. So although the letter said 10 days, there was ongoing dialogue between Mr. Clackett and the adjuster. The HIPAA was signed and returned. From the time that the demand was made, asking for a response within 10 days, until the suit was filed was 4 months. Okay. That's one of the, I'm sorry, Your Honor, misrepresentations of the record. It was not a 10-day demand and then, boom, we're filing suit. It was 4 months. When that demand was made, even though you provided 100-plus pages, there were some gaps, and the gaps would suggest that it had to do with that preexisting injury to the shoulder and treatment for that. And according to the order, the judge's order, he found that the records suggested that there might be something else that the insurance company would properly look to. And all the insurance companies said, we'd like to look at those things. And apparently you'd Aren't, isn't your client contractually obligated to provide those? She was and she did. The initial reports were tendered with the demand on June 12. On July 9, AAA received the fully executed HIPAA. And just to comment on that Looking at the district judge's opinion, he says, after the demand was made, he said that the records, the 100 pages, indicated treatment for a prior injury to the shoulder and also indicated the plaintiff had been treated by several medical providers whose records were not included in the correspondence and the 100 pages that were provided. Is that not true? The only physician that I know of Is that not true? Were there some other physicians out there who had treated? I'm not aware of any other physicians than those physicians that were enumerated in the June 12 demand. So the district court got it wrong when he said there were records? Absolutely, Your Honor. You see, the district court Excuse me, let me finish my question. Sorry. Were not included in those that were provided on June the 12th? I'm sorry. Can you ask me that again? Is the district court wrong when the district court found that there were gaps, records that were not included in those 100 pages that were previously provided with the demand letter? Yes and no. There were 10 pages of a record, I believe, from Sparks Family Clinic, the primary care provider. There was an $80 bill associated with that. Although the reports from the films were tendered, the actual films weren't tendered. We kind of morphed into the summary judgment issue. Yes. But, Your Honor, the argument from the defense was that there were these gaps, there were these missing records because of the shoulder issue. When we actually look at those records, the prior complaint was of a neck and trapezius injury. The problem with Ms. Barrera arising out of the subject collision was that she had a frozen shoulder. Patients will often relate neck trapezius as shoulder, but, in fact, when we actually look at the records, there are two distinct areas of the anatomy involved there. One was a neck trapezius issue, and then there was the post-collision freezing of the shoulder, the seizing of the shoulder. When that demand was made on June the 12th, had your client provided a signed medical authorization? Our client provided a signed medical authorization on July 9, 2009. So the answer is no, she had not. Not with the June 12 demand. Okay. She did so about three weeks later. So, Your Honor, again, viewing this in terms of an abuse of discretion, the judge got it right. Linda did not bring her claims frivolously. She didn't bring them in bad faith.        Well, Your Honor, let's go to two minutes. I'm sorry, Your Honor, I'm running past your time. Thank you, Your Honor. Okay, you have some minutes left for rebuttal, or seconds, as the case may be. We'll give you two minutes to equalize you with the opposition. Thank you, Your Honor. And just for the clarity of the record. Two minutes. I'll wait until he sets it. Okay. You may begin. For the clarity of the record, in Plaintiff's own opening brief, page 22, they acknowledge that at the time they insisted on being given some records and at the time they presented their demand, they did exclude ten pages from Amy Sparks, the records related to Dr. Bacheron's evaluation and the actual imaging from Linda's x-rays and MRIs. The problem with what they're saying now is that we should have known what was in those records when we said we wanted to see them first. If they come back irrelevant, that's fine. But we have no way of knowing that until we get them. So just going back to the Court's question about that, but I think we'll be getting into that substantively in a minute. What I did hear, and I think is important, is that when we're talking about the abuse of discretion, even if one item of the trial court's analysis under the Beatty factors was improper, and, again, I would submit that relying on an expert to save you when the court found that there was no evidence and no credible argument, his words, not mine, then even that one basis for his denial of the fees is an abuse of discretion and has to be revisited and remanded to say, if you didn't look at the expert report and excluded that in its entirety, would you still have found the first and third factor in favor of the plaintiff in denying these fees? And I think that's what the abuse of discretion is. And, counsel, counsel, that argument, as I understand it, so tell me if I've got this confused, but would go only to your $10,000 claim on the offer of judgment, not to your $400,000 claim on the baseless suit? That is correct, as long as the court didn't intermingle the two. Because if you look at the order on the 18.010, again, and I grabbed the language that was used, and it certainly was plaintiff arguing that because they had a U.M. claim that any award of fees was improper. Let's see. While we granted summary judgment in favor of defendant on claims to extra-contractual claims, we agree that defendant is not in the position of a prevailing party entitled to collect all attorney's fees incurred since the commencement of the action. Well, by saying we're not the prevailing party, when we in fact won on every cause of action that we were defending, implicitly he's including the U.M. claim as part of that consideration in the 18.010. And the way the decision is written, I can't tell whether or not the reliance on the expert filtered into the 18.010, although it should, since they obviously didn't have an expert at the beginning of the case when it was filed. But the other portion that I would look at is the order itself. When the judge says that it was a close call, it wasn't a close call about whether there was bad faith, whether there was an unfair claims violation. He said it was a close call whether her failure to cooperate breached the policy. And defeated coverage in its entirety. That's where the close call was, but he resolved it in the insured's favor, saying that's too harsh of a remedy because while she sued before the investigation was complete, they did give an authorization before they sued, even though they didn't allow the authorization to actually do what it's supposed to, which is get records to the insurance carrier. So given his decision that says plaintiff cannot dispute the defendant was not provided with medical records and authorization necessary to authorize her claim for over a year after the accident and issue, nor can plaintiff deny that merely a few months after providing defendant with incomplete information, the plaintiff demanded a settlement offer by the end of the day and then filed suit when the settlement offer was unsatisfactory, despite defendant's protests that additional investigation of plaintiff's claim was necessary. If the Court is saying her activity was so bad that it almost breached the policy, I'm not sure how one can say that the bad faith claims, the punitive damage claims don't fail, don't rise to the level of a frivolous or baseless claim. Okay. Thank you very much, counsel. Now the second phase of the case we'll hear. Thank you again, Your Honor. May it please the Court. In applying Nevada law, this Court has held that the reasonableness of an insurer's claims handling conduct is generally a question of fact. That's the Amadeo v. Prudential case. And this Court has held that a question of good faith is a question of fact. Your Honor, in this case, there are numerous issues of fact. And unfortunately, what the trial judge did was he looked at the pleadings, the affidavits and the evidence presented. He construed that evidence in a light most favorable to the insurer. And then he denied Linda's claim based upon accepting the insurer's claims as true and drawing inferences from those claims in the insurer's favor. Your Honor, there was a lot of misinformation and misdirection below. For example, there are claims that Linda failed to contact the insurer for many months after this collision, again, trying to assert that there was a contract, a delay that was a breach of the agreement. Let me get to it. I understand. We've read the record. And as I say, this was a disputed case. But the issue is whether there was a disputed material fact. Yes. And when, if ever, did the plaintiff cite to the district judge a disputed material fact? The plaintiff cited a number of – well, actually, when we look at the underlying facts, there aren't a lot. I want to know what was told by the lawyer to the judge, not what you're going through the record and finding something that should have been done. But I want to know what was objected to by the lawyer representing your client at that time to tell the judge, alert the judge that there is a disputed material fact in identifying it. What was told to the district judge was that the insurer had medical records with the demand in July, that the insurer had a – Now, start off. Just tell me what the material fact was. Linda filed a complaint alleging that the offer of $5,000 was unreasonable. The defense asserted that Linda's claim really was that they delayed in making an offer, and the district judge felt or accepted the defense characterization of Linda's claim. When we look at the complaint and we look at the moving papers, Linda's complaint was that the $5,000 settlement offer was unreasonable because the testimony of three adjusters showed that a decision was made prior to adjuster seeing any medical record of any sort that the property damage was too little to have caused an injury that would require the surgery to the shoulder. I don't understand that. Now, cite to me in the record where the plaintiff's lawyer said, Your Honor, there is a material fact in dispute, and that material fact in dispute is fill-in-the-blank. I'd like to find that in the record because I didn't find it. I don't know, as I stand here, what the Court's involved in. As I started to say, a lot of these facts are not contested. Both sides agree what happened and when. It was the inferences that the Court drew from those facts that we really are concerned with. So the judge heard from both sides. Now, you're continuing to get to your argument, but I need to know whether there was a waiver. And there's a waiver if counsel doesn't advise the Court what the objection is. So at some place, in order to be successful, you have to show in the record that the lawyer for your client, before the district judge, said the following is a disputed material fact, so therefore, there can be no summary judgment. Now, that objection must have been made. If it wasn't, there's a waiver, and it isn't cited to me, and I can't find it. And if it's in there, I'd like to know. I think that's because, again, the underlying facts were really not disputed. There was a collision. We know the date. Linda wasn't insured under the policy. It was a hit-and-run. The U.M. provisions applied. A demand was made on July 12th, June 12th. Okay. But you have a summary judgment that's being brought. Right. Because the counsel has a summary judgment in front of him. Obviously, any lawyer is going to say I've got to find a material fact so they can't get a summary judgment. And then you advise the Court what that is. Now, my question is simple. Point to me in the record where that happened. It didn't happen in that manner, Your Honor. The way it happened was the argument to the district court was, based upon these facts, Your Honor, you cannot infer that Linda delayed because, first of all, they settled their contract claim. So if there was a breach by her delay, they waived it. Okay. Well, tell me where in the record that – it's not what I'm looking for, but at least I'd know that. Where in the record is that stated? Your Honor, as I stand here, I cannot give you the citation. I wish I could. I can't. Okay. But my – But what I'm trying to convey is that what the trial judge did is he looked at these facts that both sides agreed about, but drew the wrong inferences. He drew the inferences in favor of the moving party. So, for example, although – I agree when I read the opinion that I can rely on the facts themselves as being undisputed. Correct? Yes. But, for example, when the Court is – Let's answer my question. Let me tell you what bothers me a little bit here, is I'm not sure you're drawing the distinction between a first-party action, which this is, which you have contractual obligations versus – and failure to settle reasonably, versus a third-party action where there are no contractual obligations and the common law sets up whatever the requirements are. Here, there were some specific contractual obligations, including if the insurance company wanted an independent medical examination. And didn't the insurance company advise your client or your client's counsel that once they got all the information, which they said they didn't have all the information, they were still waiting for an authorization, the missing documents, the reports, that they would preserve the right to have an independent medical examination? Because, you know, it was an unreasonable thing. There was a prior accident. Maybe the reason they weren't giving the authorization and all these additional records was because there was something that claims counsel didn't want the insurance company to see and evaluate in evaluating the case. That's not what had happened, though. Well, that's what it said. That's why I asked the question if you disagree with any of the facts set forth in the opinion, the district court's opinion, because that's what happened, at least as I see it, based on what the district court judge said the facts were, not the inferences, but just the facts. And he said, and I'm looking at page 4 of his opinion, after discussing the failure to meet several requests for an authorization and the missing medical records, said the defendant also reserved its right to require an independent medical examination. And medical index – I believe that there was never a dispute about that. There was never a dispute that Linda was prepared to have an independent medical examination. Right. And after, he got all the records. That makes sense, doesn't it? Yes. But, you see, we have the testimony of – with your indulgence. I'm sorry. I appreciate that, Dr. Dee. It's June or January. I think in EOR 229, we have the deposition of the adjuster who indicated that she had Dr. Bacheron's records as of August 21 of 2008. She had the Sparks records as of June 20, 2008. That doesn't help me, because I don't know these various doctors. All I know is you say that the recitation of the facts are correct. And I'm just telling you what the judge says were the facts that he relied on. The underlying facts. And that indicated that the insurance company felt and told your client on a number of occasions that there was additional information that was necessary to evaluate the plaintiff's claim and explain why it was necessary to obtain those medical records and a current medical – list of the medical providers and a release form. Consent form. I think I understand the Court's concern. The judge in his decision on the summary judgment indicated that the plaintiff has not shown any evidence that the defendant unreasonably delayed the handling of her claim. We don't take issue with that, because that's not what Linda pleaded. The issue in the district court was not whether AAA delayed making the offer. The issue was whether AAA made a determination before seeing any medical record that the surgery to the shoulder was unnecessary because that injury could not have occurred, and the only basis that they had to make that determination was the property damage to Linda's vehicle. This was a hit-and-run accident. They don't know what the damage was to the offending vehicle. They don't know if there were any injuries in the offending vehicle. All they knew from the – from the date of the collision was that this was a hit-and-run and that the determination was made because there was only, in their view, some $400 in property damage. It was actually about three times as much, according to the experts, that because there was only some $400 in damage to the Barrera vehicle, she couldn't have been injured. And certainly couldn't have been injured enough to cause the – the surgery. That was the issue before the district court. Not the reason why Linda – Counsel, if I could interject, I'm just going to remind that the inquiry I got from the clerk's office was that counsel on both appeals wanted to do a rebuttal argument, and we extended the time from 15 minutes per side to 20, and you've already – you've used up your time. So I don't know if you planned to make a rebuttal argument. Maybe Judge Wallace would give you a minute for rebuttal. I would appreciate that, I agree. Thank you. Thank you. We'll hear from the opposition. The Court's exactly correct. There was some hardball going on here, and they were treating it like a third-party claim. The insurance company kept asking their insured, please give us information, please give us information. And while they talked about the initial adjuster talking to the insured, who said, do I need to sign this or can I just send you the record so we can get this done? The testimony is there. That's absolutely what happened. However, once the attorney became involved, once they found out that there was going to be a surgery, once they found out that there was going to be a $100,000 policy limit demand, they said, well, we need those records. And it wasn't just in writing, it's throughout the record. We have all of the letters that we sent saying, please send us an authorization, please send us an authorization. The claims notes reflect that plaintiff's counsel's office kept saying, oh, we'll get it to you. Now, the only evidence provided by plaintiff that somehow AAA said, oh, we don't want an authorization anymore, is solely the information from Vera. And the Court's exactly right. That was in the beginning, and things changed. So what I've heard the Court ask is, where is the disputed issue of fact in this case? There isn't one. We have that admission that there's no dispute with what the Court found as a matter of fact, nor in any of the facts presented by defendant. That's what takes us out of the realm of, oh, bad faith is an issue for the jury. Because it's usually when there's a disputed issue of fact that the jury has to determine and has to evaluate as far as bad faith. We basically all agreed on what happened. And the problem is, what plaintiff is attempting to do now is shift the focus. They lost on their issues. So now they're saying, well, only look at the $5,000 offer. Let's forget what came before that. We're mad because we were only offered $5,000. But the entire reason they were offered $5,000 was because we didn't have records. They acknowledged we didn't have records in their own brief. They say, well, it was only these three things. But AAA didn't know what was in those three things. But they did know that there was a minor impact. And we'll talk about the claims note on this. But the impact was just a scratch on the bumper and fixing some of the rubber around it. And this was a BMW 7 Series that was fixed at the dealership. And the initial bid was $450. It went up because they had to do something with the rubber on it. But this isn't a big impact. They knew that Linda, when she went to the ER, didn't complain about any shoulder pain. They knew that she waited six weeks to seek any treatment. They knew that she had this other procedure where I think a mole was removed, where the arm was immobilized and could have caused the frozen shoulder or whatever shoulder complaints she had. That's what they knew at the time. And they knew that they didn't have these additional records. And they also knew that she had treated two months prior to the accident for her shoulder. Now, there's a lot of arguments in the briefs about whether or not these records say exactly that it was shoulder, if it was neck-related shoulder pain, or anything else. That only creates an issue of fact as to whether plaintiff is entitled to U.M. benefits. It doesn't create an issue of fact as to whether or not AAA was reasonable in wanting to see these records. And that's really what the basis of the ruling was. And, of course, it is a reasonable standard or is it a contractual standard? I mean, I think you're undermining your case by suggesting it's a reasonable standard. You have contractual obligations, it seems to me. And if you decide in your contract that you require full cooperation and that full cooperation is defined as submitting to an independent medical exam or providing all documents that are requested, I'm not sure reasonableness comes into play. That is true, at least with the requirement to give us authorizations, which they didn't do until after their 10-day policy limit demand, in fact, a month after it. And when we told them we wanted to have an IME or, at a minimum, a medical records review once we got everything so we could sort this issue out. And at the end of the day, had they allowed that, the claim might have been paid. We don't know. They filed suit. And then experts got involved. And, frankly, the experts also disputed causation. But I think you're exactly right. That is a contractual obligation. And if they don't comply with the contract, they can't sue us for bad faith. And I think I started to move on to my next point, which is their argument about the predetermination to deny the claim. Well, first of all, there isn't a single piece of evidence in the record. And to get to a material issue of fact, you have to have a piece of evidence. But there's no evidence in the record that the claim was ever denied. AAA was just continuing to investigate with records that were admittedly not in their possession. When they talk about Lisa Caso and her note that, oh, it focused on this low-impact thing, and that shows that they committed bad faith. First of all, that was early on in the file. And all it was was a manager reviewing what was in the claims note so far, which were plaintiff reporting on her condition, the police report, and the property damage claim. Is it any shock that they comment on what the property damage is and what the police report says? That's all they have. So when there's some criticism level that they determined already that they were going to deny the claim based solely on the low-impact nature of this case, that was the only information they had at that point. They were documenting the file. And we provided the testimony of the adjuster that made that note saying, it's just a piece of it. As we collect pieces of information, we put it in there so that when it comes time to make a decision, we have all the pieces of the puzzle. And, frankly, Your Honor, because we never got the authorizations, didn't get all the medical records, we never had all the pieces of the puzzle. And you're exactly right. That failed to comply with the contract. And that alone prevents the bad faith claim. Could you – I ask counsel, maybe you can be of assistance. There's a summary judgment motion before the district court. The first thing you try to do is show that there is a material fact in dispute so that you don't have to go to summary judgment, you get to go to trial. Is there a place, or can you tell me where I can find in the record, where this took place and whether there was an objection on the basis of the plaintiff that there was a material fact in dispute? No, Your Honor, there was not. The only – the plaintiff did not come up with an issue of fact, and I think that's part of what's been admitted here today. Now, at later dates, they tried to beef it up, and, frankly, during our arguments regarding my attorney's fees after summary judgment had already been entered, they came forward with additional evidence that they tried to put forward to the court, including this new argument that, well, AAA – well, the actual evidence is plaintiff counsel's own affidavit saying, well, AAA, based on my understanding, knew that we weren't going to give them an authorization, which doesn't create an issue of fact, which I think is where they're going now. The issue is whether, when it was before the district court, whether there was an objection based upon a material fact in dispute, and your argument is there was none. There was not. And I haven't found it. Counsel, on that point, did – did Barrera not – or did they file an opposition memorandum opposing summary judgment? And did they say there were genuine issues of material fact? They never said there were – they claimed genuine issues, but never presented any. So, yes, an opposition was filed with points and authorities and memorandum. I can tell you that one of the sections – and this may be educational, and we're only talking about the bad faith portion at this point, but there were other summary judgments in there, which I think are important, too. But the – one of the things that was provided was the expert report, and they thought that would help them survive. But they don't actually discuss any of the experts – any of the experts' application of opinion to fact. What they do is they provide bullet points of his opinion, and they are things like AAA violated several provisions of Nevada's Unfair Claims Practices Act by handling of Linda's first-party insurance claim. That's not evidence. That's not a disputed fact. That's the abstixit of an expert. And what you're – what was somewhat argued was, well, the Court should have really pulled that report, since it was attached as an exhibit, part of the, I think, three or four hundred pages of exhibits attached, and figured out if there was an issue of fact in there, even though I didn't cite directly to it. So to answer your question, an opposition was filed, but it didn't contain any of these arguments. And – Okay. Thank you. And I would just like to hit on one more thing, because I only have a minute left, but there were three summary judgments. And I don't need to hammer on the punitive damage claim fails, of course, if there is no bad faith. But it also requires clear and convincing evidence, which, again, there was no evidence because there was no disputed fact. But more importantly, we also obtained summary judgment on the damages claim, because we proved that there was no emotional distress damage, and there was no financial harm to Linda Barrera. And in doing that, all we had to do was come to the Court and say, they don't have any facts. I mean, that would satisfy our burden, at least to put it back on them to come forward with admissible evidence to establish an issue of fact. But we went further and provided plaintiff's own admissions, where during her deposition, she actually testified specifically, are you claiming any emotional distress because of what we did during your claim? No. We asked, did you have any financial injury as a result of what we did? And they say no. And again, there was no argument made below. During the appeal process, plaintiffs tried to throw something in about, well, they had a second house that they short sold that was discussed, but that really had nothing to do with this, and plaintiff, in fact, objected to the relevance, and that's when the follow-up question was asked, well, what I'm trying to ask is, did we do anything that caused you financial harm, and plaintiff said no. Okay. Thank you, counsel. Thank you. You've used up your time, but we'll give you one minute for rebuttal. One minute only. Thank you, and I'll try to be as quick as I can. Your Honor, we did raise an issue of fact in opposition to the summary judgment motions, and that was whether or not there was a predetermination to deny the claim or undervalue the claim based upon the property damage alone. That was the issue from day one. That was the issue below. That's the issue here now. Where is it in the record? It's in the opposition to Mr. Plaggett will have that citation for us in a moment, Your Honor. The claims handling process, according to the holdings of this Court, is a question of fact, and that is what we are trying to examine in this lawsuit, the claim handling process. When an adjuster in November of 2008, before 8 months before seeing any medical record, said the surgery wasn't necessary because that injury couldn't have happened because there was too little damage to the car, that was their position from day one. As of January 20, 2011, after they had received all of the records that they're saying here today they didn't receive, because, again, the testimony is it was received as of August 21, 2008, they had had an IME, they had had a document review, and they    that would have been ordered up. And there still did not have an IME. Would you bring your argument to a close? Yes, thank you, Your Honor. This is a breach of contrast standard, Your Honor. The contract claim was settled, and it was settled for ten times, more than ten times the $5,000 offer. Thank you. The case just argued to be submitted for decision.
judges: Huck, Wallace, Gould